David C. McGrail, Esq.
Patrick Train-Gutiérrez, Esq.
MCGRAIL & BENSINGER LLP
888-C 8th Avenue #107
New York, New York 10019
Tel. (917) 238-5422

*Counsel for the Plaintiffs*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
IN RE:                                                       :
                                                             :    Chapter 7
STANLEY JULES REIFER,                                        :
                                                             :    Bankr. Case No. 20-11820 (MEW)
                    Defendant.                               :
-------------------------------------------------------------x
                                                             :
DANIEL REIFER, individually and derivatively                 :
on behalf of GARRETT ASSOCIATES L.P.,                        :
CENTRAL-ELEVEN ASSOCIATES, L.P., and                         :
METRO GARDENS ASSOCIATES, L.P.,                              :    Adv. Proc. No.: _____ (MEW)
and as Trustee of the DRR Irrevocable Trust,                 :
                                                             :
                    Plaintiffs,                              :
                                                             :
           -against-                                         :
                                                             :
STANLEY JULES REIFER,                                        :
                                                             :
                    Defendant.                               :
                                                             :
And                                                          :
                                                             :
GARRETT ASSOCIATES L.P.,                                     :
CENTRAL-ELEVEN ASSOCIATES, L.P., and                         :
METRO GARDENS ASSOCIATES, L.P.,                              :
                                                             :
                    Nominal Defendants.                      :
-------------------------------------------------------------x

**COMPLAINT OBJECTING TO THE DISCHARGEABILITY OF
DEBTS DUE AND OWING BY THE DEFENDANT TO THE PLAINTIFFS**

Daniel Reifer, individually and derivatively on behalf of Garrett Associates L.P. ("Garrett"), Central-Eleven Associates, L.P. ("Central-Eleven"), and Metro Gardens Associates, L.P. ("Metro Gardens," and collectively with Garrett and Central-Eleven, the "Partnerships"), and as Trustee of the DRR Irrevocable Trust (the "Trust," and collectively with Daniel Reifer and the Partnerships, the "Plaintiffs"), by and through their counsel, McGrail & Bensinger LLP, object to the dischargeability of specific debts due and owing from the defendant Stanley Jules Reifer (the "Defendant") to the Plaintiffs, and respectfully allege as follows:

**Jurisdiction, Venue, and Statutory Predicates for Relief Requested**

1.  This adversary proceeding arises out of the bankruptcy case of the Defendant, Stanley Jules Reifer, Bankruptcy Case Number 20-11820 (MEW). This Court has jurisdiction over this Chapter 7 case and this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

2.  Venue of this adversary proceeding lies in this District pursuant to 28 U.S.C. § 1409.

3.  The statutory predicates for the relief requested herein are Bankruptcy Code §§ 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6) and Bankruptcy Rule 7001(6).

**The Parties**

4.  Stanley Jules Reifer is an individual residing at 330 West 72nd Street, Apt. 13A, New York, NY 10023.

5.  Daniel Reifer is an individual residing at 924 West End Avenue, Apt. 115, New York, New York 10025.

2

6. DRR Irrevocable Trust is a trust created in December of 2012 under the laws of the State of New York and Daniel Reifer is the Trust's sole beneficiary and is co-trustee of the Trust together with Robert J. Ross.

7. Garrett is a limited partnership organized under the laws of the State of New Jersey with its principal place of business located at 130 Grand Avenue, Englewood, New Jersey 07631.

8. Central-Eleven is a limited partnership organized under the laws of the State of New Jersey with its principal place of business located at 1009-15 Central Avenue, Union City, New Jersey 07087.

9. Metro Gardens is a limited partnership organized under the laws of the State of New York with its principal place of business located at 303-311 West 117th Street, Unit 1F, New York, New York 10026.

## Procedural History

10. On August 7, 2020, the Defendant filed with this Court a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

11. On October 23, 2020, the Plaintiffs filed against the Defendant five proofs of claim totaling $12,613,897.60.

## Factual Background

### The Garrett Partnership

12. Daniel Reifer is the majority limited partner in Garrett, with a 57% limited partnership interest.

13. The Defendant is the managing partner of Garrett, with a 24% general and limited partnership interest.

3

14. Garrett has two other limited partners, each with a 9.5% partnership interest (these two limited partners, together with Daniel Reifer, are hereinafter referred to collectively as the "Garrett Limited Partners").

15. The Garrett Limited Partners, individually, and the Defendant, as the managing general partner, are each parties to the Garrett Partnership Agreement (the "Garrett Partnership Agreement"), a true and correct copy of which is attached hereto as **Exhibit 1**. The Garrett Partnership Agreement sets forth the terms under which Garrett must operate.

16. As set forth in Paragraph 2 of the Garrett Partnership Agreement, the sole purpose of Garrett is to own, rehabilitate, operate, manage, mortgage, lease, sublease, sell, exchange, transfer, and otherwise deal in and with a residential apartment building located at 130 Grand Avenue, Englewood, New Jersey 07631 (the "Garrett Property").

17. The Garrett Partnership Agreement provides that the Defendant is the managing general partner of Garrett.

18. Pursuant to Paragraph 10 of the Garrett Partnership Agreement, the Defendant, as general partner, has the full, exclusive, and complete control of the management of Garrett. Further, pursuant to Paragraph 11, the Garrett Limited Partners have no right to participate in the management of Garrett.

19. Significantly, nowhere in the Garrett Partnership Agreement is the Defendant, as general partner, authorized to take out loans from the partnership funds, nor is he authorized to use the partnership funds for his own personal expenses.

20. Upon information and belief, the Defendant induced the Garrett Limited Partners into participating in Garrett without any oversight or control of the Defendant's management of the Garrett Property in order to allow the Defendant to misappropriate Garrett's

4

funds for his own personal use and in deliberate contravention of the express terms of the Garrett Partnership Agreement.

21. Pursuant to Paragraph 4(a) of the Garrett Partnership Agreement, Garrett is to be dissolved upon, among other things, the sale of Garrett's entire interest in the Garrett Property.

22. Pursuant to Paragraph 8 of the Garrett Partnership Agreement, upon the refinancing of the Garrett Property, the Defendant, as managing general partner, is responsible for distributing the proceeds of such refinancing.

23. Paragraph 8 of the Garrett Partnership Agreement further provides that, upon the sale of the Garrett Property, the Defendant, as managing general partner, is responsible for dissolving the partnership and for distributing the proceeds in the following manner:

>  (1) First, to discharge any debts or obligations to any lender or creditor of the partnership, other than a loan from any partner;
>
>  (2) Second, to discharge any debts or obligations of the partnership that are necessary and appropriate, other than a loan from any partner;
>
>  (3) Third, to discharge any outstanding loans made by partners, together with accrued interest;
>
>  (4) Fourth, to the limited partners in an amount equal to the total contribution of the limited partners; and
>
>  (5) Fifth, 50% of the remaining proceeds to the general partner and the other 50% of the remaining proceeds to the limited partners in accordance with their ownership interest.

24. The Garrett Property was sold at the direction of the Defendant in December of 2018 for $7,985,000 (the "Garrett Sale") and resulted in the dissolution of Garrett.

25. The proceeds from the Garrett Sale were misappropriated and improperly distributed by the Defendant.

5

26. The allegations contained herein are brought derivatively by Daniel Reifer on behalf of Garrett, since it would be futile for Daniel Reifer to request that Garrett bring the instant lawsuit when Garrett is controlled by the Defendant.

**The Defendant's Misappropriation of Garrett's Funds**

27. Pursuant to the Garrett Partnership Agreement, the Defendant was entitled to payment of a $25,000 general partner fee subject to an aggregate accumulation distribution of not less than $10,000 a year to the Garrett Limited Partners.

28. Even though the Garrett Limited Partners never received any distributions, the Defendant misappropriated Garrett's funds and paid himself approximately $240,000 in unearned general partner fees between 2012 and 2018.

29. Pursuant to a management agreement between the Defendant and Garrett entered into on April 1, 2011, the Defendant was entitled to a 5% management fee. Between 2012 and 2018, Garrett reported a gross rental income of approximately $3.6 million. As a result, the Defendant was entitled to approximately $180,000 in management fees. Instead, the Defendant paid himself approximately $695,000 in management fees, thereby misappropriating over $500,000 in unearned management fees.

30. The Defendant also refinanced the Garrett Property on numerous occasions but never distributed any of the proceeds as required by Paragraph 8 of the Garrett Partnership Agreement. Specifically, the Defendant refinanced the Garrett Property and misappropriated the following amounts:

> (a) In 2008, the Defendant refinanced Garrett's mortgage with Astoria Bank. The mortgage, which had a balance of $2,043,446, was refinanced at $3,280,000. The Defendant distributed $597,045 of the loan proceeds to himself in 2009. None of the Garrett Limited Partners were distributed any of the 2009 loan proceeds.

6

(b) In or around March 2011, Garrett obtained a mortgage on the Garrett Property from Signature Bank. The total amount of the mortgage loan was $3.7 million. Upon information and belief, the Defendant distributed an unknown amount of these funds to himself without any distributions to any of the Garrett Limited Partners.

(c) Garrett's mortgage with Signature Bank was refinanced in May 2013. According to the closing statement and Signature Bank account statement, approximately $290,700 in loan proceeds was received by Garrett. The Defendant distributed the entirety of these funds to himself, while Garrett incurred $63,381 in costs. None of the Garrett Limited Partners were distributed any of the 2013 loan proceeds.

(d) In June 2015, Garrett took out a second mortgage for $875,000. Loan proceeds of approximately $773,641 were received by Garrett. The Defendant distributed $446,517 of these loan proceeds to himself, while Garrett incurred $63,410 in costs. None of the Garrett Limited Partners were distributed any of the 2015 loan proceeds.

(e) On December 15, 2016, first and second mortgages held by Garrett were also refinanced, and loan proceeds of $459,623 were received by Garrett. The Defendant distributed $224,000 of these funds to himself while Garrett incurred $91,037 in costs. None of the Garrett Limited Partners were distributed any of the 2016 loan proceeds.

31. At the time of the Garrett Sale, Garrett's general ledger reflected unauthorized loan amounts to the Defendant, a portion of which was comprised of the aforementioned misappropriated financing distributions to the Defendant (the "Garrett Loans").

32. There is absolutely no authority in the Garrett Partnership Agreement for the Defendant to receive loans from Garrett.

33. The Garrett Loans were never repaid by the Defendant prior to the distribution of the partnership funds following the Garrett Sale, nor were the Garrett Loans subtracted from the proceeds disbursed to the Defendant following the sale. As a result, the Garrett Limited Partners received a smaller distribution from the sale than that to which they were entitled.

34. Garrett also possessed a certificate of deposit from which the Defendant misappropriated approximately $220,000 for his own personal use.

7

35. In addition, the Defendant misappropriated over $2 million from Garrett's operating account by using Garrett funds to pay for his own personal expenses, including payments to his art dealer, his landscaper, and his personal contractors.

36. From 2015 through 2017, Daniel Reifer was induced by the Defendant to make loans directly to Garrett by either transferring money directly into Garrett bank accounts or paying for some of Garrett's expenses, while the Defendant was simultaneously misappropriating Garrett's funds for his own personal use.

37. After satisfying the outstanding mortgage and additional costs associated with the closing, as required by the Garrett Partnership Agreement, Garrett received net proceeds from the sale in the amount of approximately $1.9 million. The proceeds would have been significantly greater, but the Defendant destroyed Garrett's equity in the Garrett Property through his various refinances and mortgages fraudulently made for his own benefit, as set forth above.

38. The proceeds from the Garrett Sale were required to be distributed in accordance with Paragraph 8 of the Garrett Partnership Agreement. Based upon the loans on the books from Garrett to the Defendant alone, the Defendant should not have received any distributions. Further, the Defendant should have repaid all outstanding loans and any misappropriated funds prior to making any distributions, including those made to the Defendant himself.

39. Despite the foregoing, the Defendant received $748,522.50 in distributions, $50,000 in purported general partnership fees for the years of 2017 and 2018, and $25,000 in the repayment of purported loans, all over and above the millions of dollars the Defendant misappropriated from Garrett.

8

40. Based upon the aforementioned bad acts, the Defendant is not entitled to a discharge of his debts to the Plaintiffs since he (1) failed to repay Garrett the outstanding loans made to him and (2) misappropriated funds that vastly exceed the amount of any distribution to which he would otherwise have been entitled.

**The Central-Eleven Partnership**

41. Daniel Reifer is the largest limited partner in Central-Eleven, with a total limited partnership interest of 32.5% (9.5% held personally and 23% held through the Trust).

42. The Defendant is the managing general partner of Central-Eleven, with a 1% general partnership interest.

43. Central-Eleven has seven other limited partners, each with a 9.5% limited partnership interest (these limited partners, together with the Trust and Daniel Reifer, are hereinafter referred to collectively as the "Central-Eleven Limited Partners").

44. The Central-Eleven Limited Partners, individually, and the Defendant, as the managing general partner, are each parties to the Central-Eleven Partnership Agreement, (the "Central-Eleven Partnership Agreement"), a true and correct copy of which is attached hereto as **Exhibit 2**.

45. The Central-Eleven Partnership Agreement sets forth the terms under which Central-Eleven must operate.

46. As set forth in Paragraph 2 of the Central-Eleven Partnership Agreement, the purpose of Central-Eleven is to own, rehabilitate, operate, manage, mortgage, lease, sublease, sell, exchange, transfer, and otherwise deal in and with a residential apartment building located at 1009-15 Central Avenue, Union City, New Jersey 07087 (the "Central-Eleven Property").

47. The Central-Eleven Partnership Agreement provides that the Defendant is the managing general partner of Central-Eleven.

48. Pursuant to Paragraph 10 of the Central-Eleven Partnership Agreement, the Defendant, as general partner, has the full, exclusive, and complete control of the management of Central-Eleven. Further, pursuant to Paragraph 11, the Central-Eleven Limited Partners have no right to participate in the management of Central-Eleven.

49. Significantly, nowhere in the Central-Eleven Partnership Agreement is the Defendant, as general partner, authorized to take out loans from the partnership funds, nor is he authorized to use the partnership funds for his own personal expenses.

50. Upon information and belief, the Defendant induced the Central-Eleven Limited Partners into participating in Central-Eleven without any oversight or control of the Defendant's management of the Central-Eleven Property in order to allow the Defendant to misappropriate Central-Eleven's funds for his own personal use and in deliberate contravention of the express terms of the Central-Eleven Partnership Agreement.

51. Pursuant to Paragraph 4(a) of the Central-Eleven Partnership Agreement, Central-Eleven is to be dissolved upon, among other things, the sale of the Central-Eleven Property.

52. Pursuant to the Central-Eleven Partnership Agreement, upon the refinancing of the Central-Eleven Property, the Defendant, as managing general partner, is responsible for distributing the proceeds in accordance with Paragraph 8 of the Partnership Agreement.

53. Pursuant to the Central-Eleven Partnership Agreement, upon the sale of the Central-Eleven Property, the Defendant, as managing general partner, is responsible for dissolving

the company and for distributing the proceeds in accordance with Paragraph 8 of the Central-Eleven Partnership Agreement in the following manner:

>   (1)   First, to discharge any debts or obligations to any lender or creditor of the partnership, other than a loan from any partner;
>
>   (2)   Second, to discharge any debts or obligations of the partnership that are necessary and appropriate, other than a loan from any partner;
>
>   (3)   Third, to discharge any outstanding loans made by partners, together with accrued interest;
>
>   (4)   Fourth, to the limited partners in an amount equal to the total contribution of the limited partners; and
>
>   (5)   Fifth, 50% of the remaining proceeds to the general partner and the other 50% of the remaining proceeds to the limited partners in accordance with their ownership interest.

54.   The Central-Eleven Property was sold at the direction of the Defendant in or about April of 2019 for $6,550,000 (the "Central-Eleven Sale") and resulted in the dissolution of Central-Eleven.

55.   The proceeds from the Central-Eleven Sale were misappropriated and improperly distributed by the Defendant.

56.   The allegations contained herein are brought derivatively by Daniel Reifer on behalf of Central-Eleven, since it would be futile for Daniel Reifer to request that Central-Eleven bring the instant lawsuit when Central-Eleven is controlled by the Defendant.

**The Defendant's Misappropriation of Central-Eleven's Funds**

57.   Pursuant to the Central-Eleven Partnership Agreement, the Defendant was entitled to payment of a $25,000 general partner fee subject to an aggregate accumulation distribution of not less than $10,000 a year to the Central-Eleven Limited Partners.

11

58. Even though the Central-Eleven Limited Partners never received any distributions, the Defendant misappropriated Central-Eleven's funds and paid himself a total of $376,788 in unearned general partner fees from Central-Eleven between 2012 and 2018.

59. The Defendant also refinanced the Central-Eleven Property on numerous occasions but never distributed any of the proceeds in accordance with Paragraph 8 of the Central-Eleven Partnership Agreement. Specifically, the Defendant refinanced the Central-Eleven Property and misappropriated the following amounts:

> (a) In March of 2011, Central-Eleven obtained a mortgage on the Central-Eleven Property from Signature Bank. The total amount of the mortgage loan was $3,375,000. The Defendant distributed $59,200 of the 2011 loan proceeds to himself. None of the Central-Eleven Limited Partners were distributed any of the 2011 loan proceeds.
>
> (b) In 2013, Central-Eleven's mortgage was refinanced, and Central-Eleven received approximately $362,878 of loan proceeds from the refinance. The Defendant distributed $278,000 of the 2013 loan proceeds to himself. None of the Central-Eleven Limited Partners were distributed any of the 2013 loan proceeds.
>
> (c) In 2015, Central-Eleven took out a second mortgage receiving loan proceeds of approximately $429,228. The Defendant distributed $31,000 of the 2015 loan proceeds to himself. None of the Central-Eleven Limited Partners were distributed any of the 2015 loan proceeds.

60. The Defendant also misappropriated a total of $1,137,900 from Central-Eleven's operating account. The Defendant used these partnership funds to pay for his own personal expenses including payments to his personal domestic employees and contractors.

61. Upon information and belief, the Defendant made certain unauthorized loans to himself from Central-Eleven's funds and these loans have not been repaid, as reflected in Central-Eleven's books and ledgers (the "Central-Eleven Loans").

62. There is absolutely no authority in the Central-Eleven Partnership Agreement for the Defendant to receive loans from Central-Eleven.

12

63. The proceeds from the Central-Eleven Sale would have been significantly greater, but the Defendant destroyed Central-Eleven's equity in the Central-Eleven Property through his various refinances and mortgages, fraudulently made for his own benefit, as set forth above.

64. As part of the Central-Eleven Sale, outstanding mortgages were satisfied and closing costs were paid as required by the Central-Eleven Partnership Agreement, resulting in $1,730,273.55 in net proceeds from the Central-Eleven Sale.

65. The proceeds of the Central-Eleven Sale are required to be distributed in accordance with Paragraph 8 of the Central-Eleven Partnership Agreement. Based upon the loans on the books from Central-Eleven to the Defendant alone, the Defendant should not have received any distributions. Further, the Defendant should repay all outstanding loans and any misappropriated funds prior to making any distributions to the himself of the Central-Eleven Limited Partners.

66. Based upon the aforementioned bad acts, the Defendant is not entitled to a discharge his debts since he (1) failed to repay Central-Eleven the outstanding loans made to him and (2) misappropriated funds that vastly exceed the amount of any distribution to which he would otherwise be entitled.

**The Metro Gardens Partnership**

67. Daniel Reifer is a limited partner in Metro Gardens, with a 14% limited partnership interest.

68. The Defendant is the managing general partner of Metro Gardens, with a 36% partnership interest.

69. Nancy Venturine is a limited and general partner in Metro Gardens with a 50% partnership interest (Nancy Venturine, together with Daniel Reifer, are hereinafter referred as the "Metro Gardens Limited Partners").

70. The Metro Gardens Limited Partners, individually, and the Defendant, as the managing general partner, are each parties to the Metro Gardens Partnership Agreement (the "Metro Gardens Partnership Agreement"), a true and correct copy of which is attached hereto as **Exhibit 3**. The Metro Gardens Partnership Agreement sets forth the terms under which Metro Gardens must operate.

71. As set forth in Paragraph 1.4 of the Metro Gardens Partnership Agreement, the sole purpose of Metro Gardens is investment in real property and the provision of housing through the acquisition, holding, construction, development, operation, improvement, sale, leasing or other dealings related to 334, 338, 340, 344 and 348 East 105th Street, New York, New York (collectively, the "Metro Gardens Property").

72. The Metro Gardens Partnership Agreement provides that the Defendant is the managing general partner of Metro Gardens.

73. Pursuant to Paragraph 3 of the Metro Gardens Partnership Agreement, the Defendant, as general partner, has the full, exclusive, and complete control of the management of Metro Gardens. Further, pursuant to Paragraph 3, the Metro Gardens Limited Partners have no right to participate in the management of Metro Gardens.

74. Significantly, nowhere in the Metro Gardens Partnership Agreement is the Defendant, as managing general partner, authorized to take out loans from the partnership funds, nor is he authorized to use the partnership funds for his own personal expenses.

75. Upon information and belief, the Defendant induced the Metro Gardens Limited Partners into participating in Metro Gardens without any oversight or control of the Defendant's management of the Metro Gardens Property in order to allow the Defendant to misappropriate Metro Gardens' funds for his own personal use and in deliberate contravention of the express terms of the Metro Gardens Partnership Agreement.

76. Pursuant to Paragraph 9.1(d) of the Metro Gardens Partnership Agreement, Metro Gardens is to be dissolved upon, among other things, the sale of substantially all of the assets of the partnership.

77. Pursuant to Paragraph 6.6(b) of the Metro Gardens Partnership Agreement, upon the refinancing of the Metro Gardens Property, the Defendant, as managing general partner, is responsible for distributing the proceeds of such refinancing.

78. Paragraph 6.6(b) of the Metro Gardens Partnership Agreement further provides that, upon the sale of the Metro Gardens Property, the Defendant, as managing general partner, is responsible for distributing the proceeds in the following manner:

  (i)   To discharge to the extent required by a lender or creditor, debts and obligations of [Metro Gardens];

  (ii)  To fund reserves at the managing general partner's sole discretion;

  (iii) To repay loans made by the managing general partner;

  (iv)  To payment of management fees;

  (v)   To repay all loans made by partners to the partnership; and

  (vi)  To the partners in the pro rata amount of their capital contributions.

79. The Metro Gardens Property was sold at the direction of the Defendant in October of 2018 for approximately $11.5 million (the "Metro Gardens Sale") and triggered the dissolution of Metro Gardens.

80. The proceeds from the Metro Gardens Sale were misappropriated and improperly distributed by the Defendant.

81. Despite repeated requests by the Metro Gardens Limited Partners, Defendant failed to produce Metro Garden's complete books and records for their review.

82. The allegations contained herein are brought derivatively by Daniel Reifer on behalf of Metro Gardens, since it would be futile for Daniel Reifer to request that Metro Gardens bring the instant lawsuit when Metro Gardens is controlled by Defendant.

**The Defendant's Misappropriation of Metro Gardens' Funds**

83. Defendant misappropriated over $440,000 from Metro Gardens' operating account by using Metro Gardens' funds to pay for his own personal expenses, including payments to his handyman, his housekeeper, and his personal contractors.

84. Defendant misappropriated over $160,000 from Metro Gardens' operating account by using Metro Gardens' funds to pay for his own personal staff.

85. After satisfying the outstanding mortgage and additional costs associated with the closing, as required by the Metro Gardens Partnership Agreement, Metro Gardens received net proceeds from the sale in the amount of approximately $6.1 million.

86. The proceeds from the Metro Gardens Sale were required to be distributed in accordance with Paragraph 6.6(b) of the Metro Gardens Partnership Agreement. Based upon Metro Gardens' books, the Defendant should have repaid any misappropriated funds prior to making any distributions, including those made to the Defendant himself.

87. Despite the foregoing, the Defendant received approximately $1.5 million in distributions, all over and above the hundreds of thousands of dollars the Defendant misappropriated from Metro Gardens.

16

88. Based upon the aforementioned bad acts, the Defendant is not entitled to a discharge of his debts to the Plaintiffs since he misappropriated funds that would diminish the amount of any distribution to which he would otherwise have been entitled.

### FIRST CAUSE OF ACTION
### NONDISCHARGEABLE DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(A)

89. The Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 88 of this complaint as though fully set forth herein.

90. Upon information and belief, the Defendant intended to convert the Partnerships' funds for his own personal use and benefit, and is therefore indebted to the Plaintiffs.

91. The Defendant's indebtedness was obtained through false pretenses, a false representation, or actual fraud as set forth above.

92. For the reasons set forth above, the Defendant's indebtedness to the Plaintiffs is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

### SECOND CAUSE OF ACTION
### NONDISCHARGEABLE DEBT PURSUANT TO 11 U.S.C. § 523(a)(2)(B)

93. The Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 92 of this complaint as though fully set forth herein.

94. Upon information and belief, the Defendant induced the Garrett Limited Partners, the Central-Eleven Limited Partners, and the Metro Gardens Limited Partners to become and remain limited partners of the Partnerships and thereby incurred indebtedness to them, through the Partnerships, by the use of a statement or statements in writing that were materially false, respecting the Partnerships', and therefore the Defendant's own, financial condition, upon which the Plaintiffs reasonably relied, and that the Defendant caused to be made or published with the intent to deceive the Plaintiffs.

17

95. Upon information and belief, the aforesaid statements included financial documents that falsely implied that the Partnerships, and therefore, the Defendant, had the intent and financial ability to repay the indebtedness to the Plaintiffs.

96. For the reasons set forth above, the Defendant's indebtedness to the Plaintiffs is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).

### THIRD CAUSE OF ACTION
### NONDISCHARGEABLE DEBT PURSUANT TO 11 U.S.C. § 523(a)(4)

97. The Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 96 of this complaint as though fully set forth herein.

98. The Defendant became a fiduciary to the Plaintiffs in his capacity as the managing partner of the Partnerships.

99. The Defendant knowingly breached his fiduciary duties to the Plaintiffs and failed to meet his obligations under the Garrett Partnership Agreement, the Central-Eleven Partnership Agreement, and the Metro Gardens Partnership Agreement while acting in such fiduciary capacity.

100. The Defendant failed to properly account for the Garrett Limited Partners', the Central-Eleven Limited Partners', and the Metro Gardens Limited Partners' ownership interests while acting in such a fiduciary capacity.

101. The Defendant intentionally defalcated the Partnerships' funds and fraudulently incurred debts on behalf of the Partnerships to the Plaintiffs' detriment while acting in such fiduciary capacity.

102. For the reasons set forth above, the Defendant's indebtedness to the Plaintiffs is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

## FOURTH CAUSE OF ACTION
### NONDISCHARGEABLE DEBT PURSUANT TO 11 U.S.C. § 523(a)(6)

103. The Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 102 of this complaint as though fully set forth herein.

104. The Defendant willfully and maliciously injured the Plaintiffs and their property.

105. For the reasons set forth above, the Defendant's indebtedness to the Plaintiffs is nondischargeable pursuant to 11 U.S.C.§ 523(a)(6).

### RELIEF REQUESTED

WHEREFORE, the Plaintiffs pray that this Court enter a nondischargeable judgment against the Defendant and in favor of the Plaintiffs: (i) in an amount to be determined at trial, plus interest, costs, expenses, and reasonable attorneys' fees incurred by the Plaintiffs, and (ii) for such other and further relief as is just and proper.

Dated:   New York, New York
         January 25, 2021

                                        Respectfully submitted,

                                        MCGRAIL & BENSINGER LLP

                                        *David C. McGrail*
                                        David C. McGrail, Esq.
                                        Patrick Train-Gutiérrez, Esq.
                                        MCGRAIL & BENSINGER LLP
                                        888-C 8th Avenue #107
                                        New York, New York 10019
                                        Tel. (917) 238-5422

                                        *Counsel for the Plaintiffs*